UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. _____

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) **COMPLAINT** |
| NETWORK CAPITAL FUNDING CORPORATION, | )<br>)<br>)<br>) |
| Defendant. | |

NOW COMES the Plaintiff, FIRST AMERICAN TITLE INSURANCE COMPANY ("**Plaintiff**" or "**First American**"), by and through its undersigned counsel, and complaining of the Defendant, alleges and says as follows:

## PARTIES

1. Plaintiff is a title insurance company organized and existing under the laws of the state of Nebraska, with its principal office located in the state of California.

2. Defendant NETWORK CAPITAL FUNDING CORPORATION ("**Defendant**" or "**Network Capital**"), upon information and belief, is a banking entity organized and existing under the laws of the State of Nevada, with its principal office located in the state of Florida, and it is further authorized, upon information and belief, to transact business as a foreign entity in the state of North Carolina with its registered office being located in Raleigh, Wake County, North Carolina.

1

## JURISDICTION AND VENUE
### *Diversity Jurisdiction*

3. Federal District Courts have original jurisdiction over civil actions where the matter in controversy exceeds $75,000.00 and the action is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1).

4. The parties to this action are diverse since the Plaintiff and Defendant are citizens of different states for purposes of 28 U.S.C. § 1332:

   a. Plaintiff First American is a citizen of both the states of Nebraska and California for purposes of 28 U.S.C. § 1332. Specifically, Plaintiff First American is a Nebraska corporation with its principal place of business being located at 1 First American Way, Santa Ana, California. True and accurate copies of annual reports and/or entity status reports for the Plaintiff filed with the secretaries of state for the states Nebraska and California are attached hereto as **Exhibit A**.

   b. Upon information and belief, Defendant Network Capital is a citizen of both the states of Nevada and Florida for purposes of 28 U.S.C. § 1332. Specifically, Defendant Network Capital is a Nevada Corporation with its principal place of business being located at 1395 Brickell Avenue 4th Floor, Miami, Florida. True and accurate copies of annual reports and/or entity status reports for the Defendant filed with the secretaries of state for the states of Nevada, Florida, and North Carolina are attached hereto as **Exhibit B**.

5. The amount in controversy in this matter exceeds $75,000.00. Specifically, in this action, the Plaintiff seeks to rescind, to reform, or to otherwise obtain declaratory relief with respect to an ALTA Loan Policy of Title Insurance, policy no. 50158037-0021980e (the "**Policy**") with a stated amount of insurance coverage in the amount of $407,500.00. The relief sought herein would affect the rights and obligations as between the parties in an amount exceeding $75,000.000. A true and accurate copy of the Policy is attached hereto as **Exhibit C**.

6. This Court has original jurisdiction over this matter since there is diversity of citizenship and the amount in controversy exceeds the statutory minimum.

*Venue*

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this action arises from real estate transaction, the closing of which took place in Raleigh, Wake County, North Carolina, on March 6, 2024 (the "**Closing**").

8. Specifically, the law firm acting as the settlement agent for the Closing -- the Maitin Law Firm, PLLC -- is a North Carolina Professional Limited Liability Company with its principal office located in Raleigh, Wake County, North Carolina.

9. Additionally, this action concerns the issuance of a certain title policy pursuant to a commitment for such issued by Metro Title Company, LLC, acting as agent for the Plaintiff. Metro Title Company, LLC, now known as Canterbury Title Holdings, LLC (hereinafter "**Metro Title**") pursuant to a name change effective as of March 5, 2024, is a North Carolina Limited Liability Company, with its principal

office being located in Raleigh, Wake County, North Carolina. The title policy, title commitment and closing protection letter relevant to this matter were all issued by Metro Title from its Raleigh, North Carolina office.

10. Additionally, upon information and belief, Defendant Network Capital's registered office in this state is located in Raleigh, Wake County, North Carolina.

## GENERAL ALLEGATIONS

11. At all times relevant herein, an individual named Robert A. Johnson ("**Johnson**") has been the sole fee owner of certain real property having an address of 3700 Puddingstone Cove, Charlotte, North Carolina (the "**Subject Property**").

12. In or around February 2024, an individual purporting to be Johnson sought to take out a home equity loan on the Subject Property from Defendant Network Capital.

13. The individual purporting to be Johnson in dealing with Defendant Network Capital was not actually Johnson – the true owner of the Subject Property – but was instead a fraudster who had impersonated Johnson for the purpose of obtaining loan proceeds from Defendant Network Capital.

14. Upon information and belief, Defendant Network Capital agreed to loan funds totaling $407,500.00 to, upon information and belief, an individual they thought to be Johnson, said loan being identified as Home Equity Loan ID # **********6529 (the "**Johnson Loan**").

15. The Johnson Loan was to be secured by a deed of trust on the Subject Property in favor of Defendant Network Capital.

16. Defendant Network Capital selected and retained attorney Lawrence Maitin of the Maitin Law Firm, PLLC (collectively "**Maitin**"), to act as the settlement agent and handle the closing for the Johnson Loan.

17. Maitin undertook to search title to the Subject Property for Defendant and prepared a preliminary opinion on title for the search period from August 27, 1971 to February 14, 2024.

18. On or about February 29, 2024, and pursuant to the preliminary opinion on title submitted by Maitin, Metro Title Company, as agent for Plaintiff First American, issued an "ALTA Commitment for Title Insurance" (the "**Commitment**"). A true and accurate copy of the Commitment is attached hereto as **Exhibit D**.

19. By virtue of the Commitment, Metro Title Company, as agent for First American, agreed to issue a lender's policy of title insurance as provided in such Commitment, naming Defendant Network Capital as the insured pursuant to a deed of trust upon the Subject Property, subject to, and contingent upon, certain terms, conditions, and conditions-precedent, as described therein.

20. Specifically, Paragraphs 2 and 3 of the Commitment Conditions state as follows:

> If all of the Schedule B, Part I-Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.
>
> The Company's liability and obligation is limited by and this Commitment is not valid without:
> a. the Notice;
> b. the Commitment to Issue Policy;
> c. the Commitment Conditions;
> d. Schedule A;
> e. Schedule B, Part I-Requirements; and
> f. Schedule B, Part II-Exceptions.

21. Schedule B, Part I of the Commitment provides a list of requirements for the issuance of the title insurance policy contemplated in the Commitment. In relevant part, Schedule B, Part I, paragraph 4 states as follows:

*<u>All</u> of the following requirements <u>must</u> be met:*
*. . .*
*4. Documents satisfactory to the Company that convey the Title or create the Deed of Trust to be insured, or both, <u>must be properly authorized, executed, delivered, and recorded</u> in the Public Records.*

   *a. Deed of Trust <u>from Robert A. Johnson</u> to Network Capital Funding Corporation, securing the principal amount of $407,500.00.*

(emphasis added)

22. Additionally, on February 29, 2024, Plaintiff First American issued a "Closing Protection Letter" to Defendant Network Capital (the "**CPL**"). A true and accurate copy of the CPL is attached hereto as **Exhibit E**.

23. Paragraph 3 of the Conditions and Exclusions section of the CPL states as follows:

*The Company [First American] shall have no liability under this letter for any loss arising from any:*

   *(f) fraud, theft, dishonesty, or misappropriation by anyone other than the Company, Issuing Agent, or Approved Attorney.*

   \*\*\*\*\*\*\*\*\*\*
   *(n) wire fraud, mail fraud, telephone fraud, facsimile fraud, unauthorized access to a computer, network, email, or document production system, business email compromise, identity theft, or diversion of Funds to a person or account not entitled to receive the Funds perpetrated by anyone other than the Company, Issuing Agent, or Approved Attorney.*

24. The closing for the Johnson Loan (the "**Closing**") took place on March 6, 2024.

25. The settlement agent for the Closing was Defendant's attorney and law firm, Maitin.

26. On or after the Closing, Maitin, as the Defendant's closing attorney and settlement agent, tendered to Plaintiff First American, a deed of trust dated March 6, 2024, and recorded March 11, 2024, in Book 38680 at Page 597 of the Mecklenburg County Registry (the "**Deed of Trust**"), together with a final opinion on title. A true and accurate copy of the Deed of Trust is attached hereto as **Exhibit F**.

27. The Deed of Trust purports to contain the notarized signature of "Robert A. Johnson" as owner of the Subject Property.

28. On or about April 19, 2024, Defendant submitted a written title claim asserting a claim upon the Policy (the "**Claim**") to Plaintiff.

29. The Claim asserts the signature purporting to be Johnson's on the Deed of Trust was not the true and valid signature of "Robert A. Johnson" but was instead forgery by the impersonator with whom Defendant Network Capital had been dealing. A true and accurate copy of the Claim is attached hereto as **Exhibit G**.

30. Pursuant to the facts as asserted in the Claim, the Deed of Trust was never properly authorized, executed and delivered by Robert A. Johnson.

31. According to the facts as asserted in the Claim, the Deed of Trust was ineffective to convey title to the Subject Property, or a security interest therein, to Defendant Network Capital.

32. Upon information and belief, at the time of Closing, Defendant Network Capital believed that the signature purporting to be the signature of Johnson on the Deed of Trust was the true and valid signature of Robert A. Johnson.

33. Upon information and belief, at the time Defendant's attorney and settlement agent requested issuance of the Policy, Defendant believed the Deed of Trust had been properly executed by Robert A. Johnson as owner of the Subject Property.

34. At the time of issuance of the Policy, Plaintiff First American understood and believed that the signature purporting to be the signature of Johnson on the Deed of Trust was the true and valid signature of Robert A. Johnson.

35. At the time of issuance of the Policy, both Plaintiff and Defendant believed that the Deed of Trust was properly authorized, executed and delivered by Robert A. Johnson as the owner of the Subject Property.

36. On March 11, 2024, Plaintiff's agent issued the Policy upon the mistaken belief that all requirements of the Commitment had been met, including specifically, that the Deed of Trust had been properly authorized, executed and delivered by Robert A. Johnson as the owner of the Subject Property.

37. On or around April 19, 2024, Defendant Network Capital discovered that the Deed of Trust had not, in fact, been properly authorized, executed and delivered by Robert A. Johnson, and that instead, the same was a forgery.

38. On or around April 19, 2024, Defendant Network Capital submitted to Plaintiff First American the Claim on the Policy, informing First American for the

first time that the Deed of Trust was a forgery and the same had not been properly authorized, executed, and delivered by Robert A. Johnson.

## FIRST CLAIM FOR RELIEF
*Rescission of the Policy for Mutual Mistake*

39. Plaintiff realleges and incorporates by reference herein the foregoing paragraphs of this Complaint.

40. At the time of the issuance of the Policy, both the Plaintiff and the Defendant believed the Deed of Trust was properly authorized, executed and delivered by Robert A. Johnson as the owner of the Subject Property.

41. At the time of the issuance of the Policy, all parties involved with the issuance of the Policy, including specifically both the Plaintiff and the Defendant, believed that all of the requirements listed under Schedule B, Part I of the Commitment had occurred.

42. In actuality, the Deed of Trust was not properly authorized, executed and delivered by Robert A. Johnson as the owner of the Subject Property, and instead, the same was a forgery executed by an individual impersonating Robert A. Johnson.

43. As such, at the time of the issuance of the Policy, the requirements listed under Schedule B, Part I of the Commitment had not occurred.

44. The fact that the Deed of Trust was not properly authorized, executed and delivered by Robert A. Johnson as the owner of the Subject Property constitutes a mutual mistake of material fact as between Plaintiff First American and Defendant Network Capital in connection with the issuance of the Policy.

45. As evidenced by the express terms of the Commitment, having the Deed of Trust properly authorized, executed and delivered by Robert A. Johnson as the owner of the Subject Property was a material fact and requirement for the issuance of the Policy.

46. As such, Plaintiff First American is entitled to have the Policy rescinded as having been issued upon a mutual mistake of material fact of the parties.

## SECOND CLAIM FOR RELIEF -- ALTERNATIVE
*Judicial Reformation of the Policy*

47. Plaintiff realleges and incorporates by reference herein the foregoing paragraphs of this Complaint.

48. In the event that Plaintiff First American is unable to have the Policy be rescinded as sought pursuant to the First Claim For Relief, then alternatively Plaintiff First American is entitled to have the Policy be reformed to include a Schedule B Exception from Coverage associated with Commitment Requirement Schedule B, Part I, paragraph 4 not being fulfilled as now known by the parties, such that the Policy as reformed contains an Exception for the Deed of Trust not being properly authorized, executed and delivered by Robert A. Johnson.

## THIRD CLAIM FOR RELIEF -- ALTERNATIVE
*Avoidance of the Policy under N.C.G.S. § 58-3-10*

49. Plaintiff realleges and incorporates by reference herein the foregoing paragraphs of this Complaint.

50. Upon information and belief, Defendant Network Capital, either directly or through its settlement agent Maitin Law Firm, represented to Plaintiff

First American that the Deed of Trust had been properly authorized, executed, and delivered by Robert A. Johnson as the owner of the Subject Property.

51. The requirement that the Deed of Trust was properly authorized, executed, and delivered by Robert A. Johnson as the owner of the Subject Property was a material inducement to the issuance of the Policy by Plaintiff First American, including its issuance without exception for such material fact not being fulfilled as assumed by all parties.

52. As such, under N.C.G.S. § 58-3-10, Plaintiff First American is entitled to avoid the Policy and/or its obligations to cover losses thereunder, arising from the mutually mistaken and incorrect belief as to the identity of the individual who executed the Deed of Trust.

## FOURTH CLAIM FOR RELIEF
*Declaratory Judgment as to First American's Obligations under the Policy*

53. Plaintiff realleges and incorporates by reference herein the foregoing paragraphs of this Complaint.

54. There currently exists a dispute between the parties regarding Plaintiff First American's obligations under the Policy with respect to the Claim.

55. Based upon the foregoing, Plaintiff First American is entitled to have the Policy rescinded, reformed, or avoided, such that it is not obligated to cover losses resulting from the parties' mistaken belief as to the identity of the individual who executed the Deed of Trust.

56. As such, Plaintiff First American is entitled to a Declaratory Judgment pursuant to N.C.G.S. §§ 1-253 *et seq.,* and 1A-1 Rule 70, or alternatively, pursuant to 28 U.S.C. § 2201 *et seq.,* determining and declaring that it is not obligated by or under the Policy to cover losses resulting from the parties' mistaken belief as to the identity of the individual who executed the Deed of Trust.

**WHEREFORE,** Plaintiff First American respectfully prays to the Court as follows:

1. That the Court enter judgment in favor of the Plaintiff rescinding the Policy as being based upon a mutual mistake of material fact as between the parties;

2. That, alternatively, the Court enter a judgment in favor of the Plaintiff reforming the Policy, consistent with the express terms of the Commitment, such that losses resulting from the mutually mistaken belief as to the identity of the individual who executed the Deed of Trust are excluded from coverage under the Policy;

3. That, alternatively, the Court enter a judgment in favor of the Plaintiff avoiding the Policy under N.C.G.S. § 58-3-10 as having been issued upon a false representation of material fact as to the identity of the individual who executed the Deed of Trust;

4. That the Court, acting pursuant to N.C.G.S. §§ 1-253 *et seq.,* and 1A-1, Rule 70, or alternatively, pursuant to 28 U.S.C. 2201 *et seq.,* enter a judgment determining and declaring that Plaintiff First American is not obligated by or under the Policy to cover losses resulting from the parties' mutually mistaken belief as to the identity of the individual who executed the Deed of Trust; and

5. That the Court award the Plaintiff such other and further relief as it may deem just and proper.

This the 25th day of June, 2024.

By: /s/ Alan B. Powell
Alan B. Powell, N.C.S.B. #17555
Zachary W. Green, N.C.S.B. #55748
*Attorneys for Plaintiff*

OF COUNSEL:

ROBERSON HAWORTH & REESE, PLLC
300 North Main Street, Suite 300
P.O. Box 1550
High Point, NC 27261
Telephone: (336) 889-8733
Facsimile: (336) 885-1280
E-mail: apowell@rhrlaw.com
zgreen@rhrlaw.com