IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CV-358-FL

FIRST AMERICAN TITLE INSURANCE COMPANY,

Plaintiff,

v.

NETWORK CAPITAL FUNDING CORPORATION,

Defendant.

ORDER

This matter comes before the court on defendant's motion to dismiss (DE 16) and plaintiff's motion for judgment on the pleadings. (DE 27). The issues raised have been briefed fully and in this posture are ripe for ruling. For the following reasons, defendant's motion is granted, and plaintiff's motion is denied.

**STATEMENT OF THE CASE**

Plaintiff commenced this action June 25, 2024, seeking recission, reformation, avoidance, and declaratory judgment of non-coverage, of a policy of title insurance it issued to defendant, based on mutual mistake by the parties as to the identity of an individual executing a deed of trust in a residential loan transaction.

Defendant filed an answer and the instant motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and for failure to join a necessary party pursuant to Federal Rule of Civil Procedure 12(b)(7).[1] After briefing on defendant's motion

[1] Defendant asserts in its motion that it transferred and assigned its interest in the underlying loan to Flagstar

completed, plaintiff filed the instant motion for judgment on the pleadings, seeking judgment in its favor on all claims, relying upon the following documents: 1) release of security instrument filed in Mecklenburg County, North Carolina, 2) a North Carolina State Bar ethics opinion, and 3) an article published on "Byte of Prevention Blog." (Pl's Ex. 3 (DE 28-3) at 1).

**STATEMENT OF FACTS**

The facts alleged in the complaint may be summarized as follows. "At all times relevant herein, an individual named Robert A. Johnson ('Johnson') has been the sole fee owner of certain real property having an address of 3700 Puddingstone Cove, Charlotte, North Carolina (the 'Subject Property')." (Compl. (DE 8) ¶ 11).[2]

"In or around February 2024, an individual purporting to be Johnson sought to take out a home equity loan on the Subject Property from [d]efendant." (Id. ¶ 12). "The individual purporting to be Johnson in dealing with [defendant] was not actually Johnson – the true owner of the Subject Property – but was instead a fraudster who had impersonated Johnson for the purpose of obtaining loan proceeds from [d]efendant." (Id. ¶ 13).

Defendant "agreed to loan funds totaling $407,500.00 to . . . an individual they thought to be Johnson, said loan being identified as Home Equity Loan ID # **********6529 (the 'Johnson Loan')." (Id. ¶ 14). "The Johnson Loan was to be secured by a deed of trust on the Subject Property in favor of [d]efendant." (Id. ¶ 15).

Defendant "selected and retained attorney Lawrence Maitin of the Maitin Law Firm, PLLC (collectively 'Maitin'), to act as the settlement agent and handle the closing for the Johnson Loan."

---

Bank, N.A. Because the court dismisses plaintiff's claims based upon defendant's motion under Rule 12(b)(6), and defendant does not raise this defense in opposition to plaintiff's motion for judgment on the pleadings, the court does not address further herein this part of defendant's motion.

[2] All references to the complaint and "Compl." in citations are to the operative complaint filed July 3, 2024, at docket entry (DE) number 8, which is identical to plaintiff's original complaint filed June 25, 2024, and July 1, 2024, except that it includes an index and description of exhibits.

(Id. ¶ 16). "Maitin undertook to search title to the Subject Property for [d]efendant and prepared a preliminary opinion on title for the search period from August 27, 1971 to February 14, 2024." (Id. ¶ 17).

"On or about February 29, 2024, and pursuant to the preliminary opinion on title submitted by Maitin, Metro Title Company, as agent for [plaintiff], issued an 'ALTA Commitment for Title Insurance' (the 'Commitment')." (Id. ¶ 18). In the Commitment, plaintiff "agreed to issue a lender's policy of title insurance as provided in such Commitment, naming [defendant] as the insured pursuant to a deed of trust upon the Subject Property, subject to, and contingent upon, certain terms, conditions, and conditions-precedent, as described therein." (Id. ¶ 19). Specifically, the Commitment states: "If all of the Schedule B, Part I-Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and [plaintiff's] liability and obligation end." (Commitment, Compl. Ex. D (DE 8-5) at 2).[3] Schedule B, Part I provides, in relevant part:

> All of the following requirements must be met: . . . .
>
> 4. Documents satisfactory to [plaintiff] that convey the Title or create the Deed of Trust to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.
>
>     a. Deed of Trust from Robert A. Johnson to [defendant], securing the principal amount of $407,500.00.

(Commitment, Compl. Ex. D (DE 8-5) at 5 (emphasis added) (hereinafter, the "Schedule B, Part I-Requirements").

On that same date, plaintiff issued a "Closing Protection Letter" to defendant, stating, inter alia:

---

[3] Page numbers in citations, unless otherwise specified, are those specified by the court's Case Management / Electronic Case Filing (CM/ECF) system and not the page number, if any, showing on the face of the underlying document.

> [Plaintiff] shall have no liability under this letter for any loss arising from any: . . .
>
> (f) fraud, theft, dishonesty, or misappropriation by anyone other than [plaintiff], Issuing Agent, or Approved Attorney. . . .
>
> (n) wire fraud, mail fraud, telephone fraud, facsimile fraud, unauthorized access to a computer, network, email, or document production system, business email compromise, identity theft, or diversion of Funds to a person or account not entitled to receive the Funds perpetrated by anyone other than the Company, Issuing Agent, or Approved Attorney.

(Closing Protection Letter, Compl. Ex. E (DE 8-6) at 1-2).

"The closing for the Johnson Loan (the 'Closing') took place on March 6, 2024." (Compl. ¶ 24). "The settlement agent for the Closing was [d]efendant's attorney and law firm, Maitin." (Id. ¶ 25). "On or after the Closing, Maitin, as the Defendant's closing attorney and settlement agent, tendered to Plaintiff First American, a deed of trust dated March 6, 2024, and recorded March 11, 2024, in Book 38680 at Page 597 of the Mecklenburg County Registry (the "Deed of Trust"), together with a final opinion on title." (Id. ¶ 26). "The Deed of Trust purports to contain the notarized signature of 'Robert A. Johnson' as owner of the Subject Property." (Id. ¶ 27; see Deed of Trust, Compl. Ex. F (DE 8-7)).

"On March 11, 2024, [p]laintiff's agent issued the Policy [(hereinafter, the 'Policy')] upon the mistaken belief that all requirements of the Commitment had been met, including specifically, that the Deed of Trust had been properly authorized, executed and delivered by Robert A. Johnson as the owner of the Subject Property." (Compl. ¶ 36; see Policy, Compl. Ex. C (DE 8-4) at 1-19). The Policy provides coverage for "covered risks" including the following:

> 9. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. Covered Risk 9 includes, but is not limited to, insurance agent loss caused by:
>
>     a. forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

c. the Insured Mortgage not being properly authorized, created, executed, witnessed, sealed, acknowledged, notarized (including by remote online notarization), or delivered;

(Policy, Compl. Ex. C (DE 8-4) at 2).

On "April 19, 2024, [defendant] discovered that the Deed of Trust had not, in fact, been properly authorized, executed and delivered by Robert A. Johnson, and that instead, the same was a forgery." (Compl. ¶ 37). That same date, defendant submitted to plaintiff a "[c]laim on the Policy, informing First American for the first time that the Deed of Trust was a forgery and the same had not been properly authorized, executed, and delivered by Robert A. Johnson." (Id. ¶ 38; see Claim, Compl. Ex. G (DE 8-8)).

"[A]t the time of Closing," and "at the time of issuance of the Policy," both plaintiff and defendant "believed that the signature purporting to be the signature of Johnson on the Deed of Trust was the true and valid signature of Robert A. Johnson." (Compl. ¶¶ 32, 34). "[A]t the time [d]efendant's attorney and settlement agent requested issuance of the Policy, [d]efendant believed the Deed of Trust had been properly executed by Robert A. Johnson as owner of the Subject Property." (Id. ¶ 33). "At the time of issuance of the Policy, both [p]laintiff and [d]efendant believed that the Deed of Trust was properly authorized, executed and delivered by Robert A. Johnson as the owner of the Subject Property." (Id. ¶ 35).

**COURT'S DISCUSSION**

A. Standard of Review

In reviewing a motion for judgment on the pleadings, the court "appl[ies] the same standard as a 12(b)(6) motion to dismiss." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[4]

B. Analysis

Defendant argues that plaintiff's claims fail as a matter of law on the basis of the allegations in the complaint and the plain language of the Policy. The court agrees, considering each of plaintiff's claims in turn below.

1. Recission

Plaintiff's first claim is based upon recission of the Policy for mutual mistake, in that both parties "believed the Deed of Trust was properly authorized, executed and delivered by Robert A. Johnson as the owner of the Subject Property." (Compl. ¶ 40). The law, however, does not allow for recission of the Policy on this asserted basis.

"It is a well-recognized principle that equity will grant relief from the consequences of mistake, some unintentional omission, or error, arising from ignorance, surprise, imposition or misplaced confidence." Marriott Fin. Servs., Inc. v. Capitol Funds, Inc., 288 N.C. 122, 135, (1975). "It is not every mistake, however, which will justify the equitable remedy of rescission." Id. "[A] contract may be avoided on the ground of mutual mistake of fact where the mistake is common to both parties and by reason of it each has done what neither intended." MacKay v.

[4] Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

McIntosh, 270 N.C. 69, 73 (1967). "[I]n order to affect the binding force of a contract, the mistake must be of an existing or past fact which is material; it must be as to a fact which enters into and forms the basis of the contract, or in other words, it must be of the essence of the agreement, the sine qua non, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties." Id.

"[B]ecause of the uncertainty surrounding the law of mistake [the North Carolina Supreme Court is] extremely hesitant to apply this theory to a case involving the completed sale and transfer of real property." Hinson v. Jefferson, 287 N.C. 422, 432 (1975). Likewise, it is well established that "[e]xclusions from and exceptions to undertakings by [an insurance] company are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by [a] policy" of insurance." Maddox v. Colonial Life & Acc. Ins. Co., 303 N.C. 648, 650 (1981). "[I]f the language of the policy is plain and unambiguous, the Court must give effect to the policy as written." Marriott Fin. Servs., Inc., 288 N.C. at 144.

Thus, where one party to a contract has "assumed the sole risk of error" or "chose to proceed on its limited knowledge," equity will not intervene to avoid the consequences of the terms of a contract. Id. "A party bears the risk of a mistake when the risk is allocated to him by agreement of the parties." Roberts v. Century Contractors, Inc., 162 N.C. App. 688, 692 (2004) (quoting Restatement (Second) Contracts, § 154 (1979)); see also, Hinson, 287 N.C. at 432 (noting example where "the mistake appears to have been mutual," but the court did not grant recission of contract for purchase of property since the complainant "assumed the risk of soil defects").

Here, plaintiff's claim for recission fails as a matter of law because of two independent and alternative reasons. First, the asserted mistake does not qualify as a "mutual mistake" entitling plaintiff to recission, because it is not one "by reason of [which] each has done what neither

intended." MacKay, 270 N.C. at 73. Rather, only plaintiff has done what it did not intend to do, by issuing the Policy. (See Compl. ¶ 36; Pl's Opp. (DE 19) at 7 (stating plaintiff "would not have issued the Policy had it known the truth")). Defendant obtained the Policy, as it intended, and has asserted a claim under it, notwithstanding the mistake. (Compl. ¶ 38).

Second, plaintiff assumed the risk of the very mistake that has come to pass. Indeed, the Policy expressly provides coverage for "forgery, fraud, . . . or impersonation," and "the Insured Mortgage not being properly . . . authorized, . . . executed, . . . delivered [or] . . . . recorded," where the Insured Mortgage is defined specifically as including the Deed of Trust. (Policy, Compl. Ex. C (DE 8-4) at 2, 6, 13). Likewise, there is no exclusion in the Policy for a mistake of impersonation or forgery in the Deed of Trust, even though there are multiple other types of risks and defects that are excluded from coverage. (See id. at 4). Accordingly, plaintiff "assumed the sole risk of error" in issuing the Policy, and that is precisely the risk that defendant contracted to cover through obtaining the Policy. Marriott Fin. Servs., Inc., 288 N.C. at 139.

Plaintiff's arguments are unavailing in overcoming these fatal deficiencies in its recission claim. Plaintiff asserts that due the "forgery executed by an individual impersonating Robert A. Johnson[,] . . . the requirements listed under Schedule B, Part I of the Commitment had not occurred." (Compl. ¶¶ 42-43). As such, plaintiff argues, a "material condition-precedent to the issuance of the [P]olicy" was not met, precluding formation and enforcement of the Policy. (Pl's Mot. (DE 27) at 1; Pl's Reply (DE 30) at 3).[5] This argument fails on multiple levels. First, the Policy does not state that the requirements listed under Schedule B, Part I of the Commitment are conditions precedent to the issuance of the Policy. To the contrary, it states that it "is the entire

[5] In analyzing plaintiff's arguments in support of its claims, the court considers both its opposition to defendant's motion and plaintiff's briefs in support of its motion, as both address the viability of the claims as a matter of law.

policy and contract between the Insured and the Company." (Policy, Compl. Ex. C (DE 8-4) at 11). Likewise, the Commitment precludes incorporation of its terms into the Policy by stating "[w]hen the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy." (Commitment, Compl. Ex. D (DE 8-5) at 3). Thus, the premise of plaintiff's argument, that the Commitment is a "condition precedent" to the Policy, (Pl's Reply (DE 30) at 3), is without merit.

Second, the Commitment does not advance plaintiff's claim that there was a "mutual mistake" of the type entitling plaintiff to recission. MacKay, 270 N.C. at 73. The Commitment does not transform the asserted mistake into one "by reason of [which] each has done what neither intended." Id. The Commitment "is an offer" by plaintiff "to issue one or more title insurance policies." (Commitment, Compl. Ex. D (DE 8-5) at 1). It states that "[i]f all the Schedule B, Part I-Requirements have not been met . . . this Commitment terminates and the Company's liability and obligation end." (Id. at 2). One such requirement is that "[d]ocuments satisfactory to the Company that convey the Title or create the Deed of Trust to be insured, or both, must be properly authorized, executed, delivered, and recorded." (Id. at 5). This requirement, however, is stated in passive voice, (e.g., "must be properly authorized"), and it does not place any obligation or liability specifically on defendant. Indeed, defendant contracted for insurance against the risk of exactly such a mistake. (See Policy, Compl. Ex. C (DE 8-4) at 2 (covering the Deed of Trust "not being properly authorized, . . . executed, . . . delivered [or] . . . . recorded"). Thus, there is no basis to infer that a mistake as to satisfaction of this requirement is one "by reason of [which] each [party] has done what neither intended." MacKay, 270 N.C. at 73. As with the Policy itself, defendant's reasons "animat[ing] and control[ing]" its conduct in accepting the Commitment, by virtue of its

position in the transaction, necessarily are much different than those of plaintiff. Id. Accordingly, the Commitment does not provide a basis for recission of the Policy due to the asserted mistake.

Third, and relatedly, the Commitment does not alter the conclusion that plaintiff assumed the risk of mistake by issuing the Policy which plaintiff now seeks to rescind. It is contrary to the principles of equity upon which the law of mutual mistake is based to accept that the Commitment excludes or somehow transfers to defendant the very risk to which plaintiff assumed through the plain language of the Policy. Here, the Policy does not contain any exclusion for a mistake in failing to sufficiently verify the identity of the borrower or the execution of the Deed of Trust, even though there are exclusions for "[a]ny defect" created by the insured, or "[a]ny defect" not known to the plaintiff. (Policy, Compl. Ex. C (DE 8-4) at 4). Because "exclusions from coverage are construed strictly so as to provide coverage which would otherwise be afforded by the policy," Marriott Fin. Servs., Inc., 288 N.C. at 139, this court cannot rewrite the Policy to exclude from coverage the very risk that the Policy insures against.

Plaintiff argues that it did not assume the risk of forgery and impersonation under the Policy because the Closing Protection Letter separately addresses risks associated with "the underlying closing process" and it excludes liability for "fraud, theft, dishonesty, or misappropriation," or "identity theft," "by anyone other than the Company, Issuing Agent, or Approved Attorney." (Pl's Mem. (DE 28) at 10-11). Plaintiff also points out that "[a] typical policy, if validly issued, [only] would afford coverage for fraud or forgeries in the chain of title preceding the insured instrument." (Pl's Opp. (DE 19) at 10 (emphasis in original); see Pl's Mem. (DE 28) at 9). These arguments are beside the point. "[I]f the language of the policy is plain and unambiguous, the Court must give effect to the policy as written." Marriott Fin. Servs., Inc., 288 N.C. at 144. Here, plaintiff does not advance a viable argument that the actual, plain, language of the Policy, providing

coverage for "forgery, fraud . . . or impersonation" and "the Insured Mortgage not being properly authorized," does not cover defendant's claimed loss. (Policy, Compl. Ex. C (DE 8-4) at 2). The fact that a separate policy also covered certain closing risks, and not others, or what a typical policy would cover, is irrelevant to this determination. Moreover, the fact that the Closing Protection Letter expressly excludes coverage for fraud or identity theft by a third party demonstrates that plaintiff could have placed such an exclusion in the Policy itself. The absence of such an exclusion in the Policy itself is fatal to plaintiff's argument.

Plaintiff suggests it should be entitled to recission of the Policy on the basis that "[i]t is a well-established principle of law and equity in North Carolina that 'where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes the confidence or by his negligent conduct made it possible for the loss to occur, must bear the loss.'" (Pl's Mem. (DE 28) at 15 (citing Johnson v. Schultz, 364 N.C. 90, 93 (2010)). Plaintiff asserts in its brief that defendant "first reposed confidence in the fraudster who was impersonating Johnson, and in Maitin as its closing attorney to effectuate the Closing." (Id.).

This suggestion is without merit because the Johnson case and the stated principles therein do not address liability in instances where an insurance contract between the parties already allocates the risk of loss for precisely such fraud or misconduct. See Marriott Fin. Servs., Inc., 288 N.C. at 144 (holding that if one party to a contract has "assumed the sole risk of error" or "chose to proceed on its limited knowledge," then "intervention of equity" is not warranted to avoid the consequences of the terms of a contract); see Roberts, 162 N.C. App. at 692. Where "the terms of the policy are plain, unambiguous, and susceptible of only one reasonable interpretation, a court will enforce the contract according to its terms." ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 116 (4th Cir. 2006). The court "may not . . . rewrite the

contract or impose liabilities on the parties not bargained for and found therein." Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 506 (1978).

In Johnson, upon which plaintiff relies, the court did not address the question of liability under a policy of title insurance, as here, which covered the conduct resulting in loss. See Johnson, 364 N.C. at 93. Rather, it addressed "principles of equity that have been applied under North Carolina jurisprudence to allocate losses between innocent parties," in that case the buyer and seller in a real estate transaction, where the closing attorney embezzled settlement proceeds. Id. The court also did not address recission or reformation of a policy of insurance. Indeed, the court recognized that the buyers, who the court held "must bear the risk of such losses," had themselves retained an attorney to "obtain[] title insurance" on their behalf. Id. at 91-92. Moreover, the court recognized that the buyers could have contracted with a title insurance company to "protect themselves" from the losses at issue in that case. Id. at 95. In sum, Johnson and the equitable rule it promotes are inapposite because they do not address applicability of a policy of title insurance, as here, covering the precise risk of loss that plaintiff now seeks to avoid.

In sum, plaintiff has not alleged facts supporting a claim for recission of the Policy based upon mutual mistake. Therefore, defendant's motion in this part must be granted and plaintiff's motion in this part must be denied.

2. Reformation

Plaintiff seeks judicial reformation of the Policy, in the alternative to recission, to include an exception due to the Commitment, Schedule B, Part I, requirements not being fulfilled. For the following reasons, this claim fails as a matter of law.

"Equity will correct or reform a written contract or other instrument inter vivos, where, through mutual mistake, or the mistake of one of the parties, induced or accompanied by the fraud

of the other, it does not, as written, truly express their agreement." Sills v. Ford, 171 N.C. 733, 88 S.E. 636, 637 (1916).[6] "The party asking for relief, by reformation of a deed or written instrument, must allege and prove, first, that a material stipulation, as alleged, was agreed upon by the parties to be incorporated in the deed or instrument as written; and, second, that such stipulation was omitted from the deed or instrument as written by mistake, either of both parties, or of one party, induced by the fraud of the other, or by the mistake of the draftsman." Matthews v. Shamrock Van Lines, Inc., 264 N.C. 722, 725 (1965). "Equity will give relief by reformation only when a mistake has been made, and the deed or written instrument, because of the mistake, does not express the true intent of both parties." Id. "The mistake of one party to the deed or instrument alone, not induced by the fraud of the other, affords no ground for relief by reformation." Id.

Plaintiff's reformation claim fails because plaintiff has not alleged any material stipulation that was agreed upon by the parties but omitted from the Policy by mistake. In other words, plaintiff has not alleged that a mistake has been made in drafting such that the Policy "does not express the true intent of both parties." Id. Indeed, defendant asserted a claim under the Policy based upon the facts alleged in plaintiff's complaint, (compl. ¶ 38), and there is no allegation that defendant contends any "stipulation was omitted" from the Policy, whether by mistake or otherwise. Matthews, 264 N.C. at 725. Therefore, reformation of the Policy in the manner requested is not supported by the facts alleged.

Plaintiff cites to Lawyers Title Ins. Co. v. Golf Links Dev. Corp., 87 F. Supp. 2d 505 (W.D.N.C. 1999), as an example of a case where the court granted judgment in favor of a title insurance company on a claim for reformation of a policy based upon mutual mistake. However, Lawyers Title is inapposite for several reasons. There, the seller of a parcel of land in a real estate

---

6 The cites to both the North Carolina reporter and Southeastern Reporter, where the North Carolina reporter does not contain a pincite.

transaction erroneously included in the contract of sale an occupied residential lot that should have been excluded. Defendant's former officer admitted "this was a mistake," id. at 508, and the plaintiff title insurer sought "reformation of the contract to delete that lot from its policy." Id. at 510. In finding the mutual mistake of the parties sufficient for reformation of the policy, the court did not discuss the terms of the title insurance policy, nor the issue of whether the plaintiff assumed the risk of the mistake through such terms. Id. at 512. Indeed, the court recognized that the "[d]efendant's arguments were addressed to reformation of the contract of sale" and deed. Id. at 512 n. 3. On this point, the court noted that the land "sale contract . . . placed the onus on the buyer [the defendant] to ascertain the extent of the property," but it did not do so. Id. at 512-13. In addressing equitable factors, the court found "disingenuous" defendant's "defense" that its current officer purchased the land individually, and not defendant itself. Id. at 513. The court also noted remarks by defendant's current officer that he intended to capitalize on the mistake to commence "a lawsuit for $750,000 in damages [from the seller], exactly the amount owed [the seller] under the promissory note." Id. The court further found implausible the current officer's contention that he actually intended to "buy everything" including the erroneously listed lot. Id. at 514. As such, Lawyers Title is not helpful to the instant analysis because it does not address the issue of assumption of risk or the intent of the parties in entering into the title insurance Policy, and it turns upon multiple equitable factors not present in the instant case.

In sum, plaintiff has not alleged facts supporting a claim for reformation of the Policy. Therefore, defendant's motion in this part is granted and plaintiff's motion in this part is denied.

3. Avoidance

Plaintiff asserts a claim, in the alternative, for avoidance of the Policy under N.C. Gen. Stat. § 58-3-10, on the basis that defendant, through Maitin, represented falsely to plaintiff that the

Deed of Trust had been properly authorized, executed, and delivered. For the following reasons, plaintiff has not alleged sufficient facts to support a claim for avoidance.

"All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and a representation, unless material or fraudulent, will not prevent a recovery on the policy." N.C. Gen. Stat. § 58-3-10. "Interpreting this statute,[7] it is well settled that a material representation which is false will constitute sufficient ground upon which to avoid the policy." Swartzberg v. Rsrv. Life Ins. Co., 252 N.C. 150, 155, (1960). "[A] representation in an application for an insurance policy is deemed material if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract, or in estimating the degree and character of the risk, or in fixing the rate of premium." Goodwin v. Invs. Life Ins. Co. of N. Am., 332 N.C. 326, 331 (1992).

Plaintiff's claim fails at the outset because the complaint does not allege any statement made in an "application for a policy of insurance." N.C. Gen. Stat. § 58-3-10. Indeed, the term "application" is not mentioned anywhere in the complaint. (See Compl. at 1-13). Further, the complaint does not otherwise allege facts permitting an inference that Maitin made a statement in an "application for a policy of insurance." N.C. Gen. Stat. § 58-3-10. Cases upon which plaintiff relies in support of its avoidance claim are instructively distinguishable on this basis because they involve specific statements made by an insured in a written application for insurance. E.g. Matter of McCrary, 112 N.C. App. 161, 163 (1993) (property insurance "application form"); Walker v. Philadelphia Life Ins. Co., 127 F. Supp. 26, 28 (E.D.N.C. 1954) (quoting specific "questions and answers" in life insurance application); Tedder v. Union Fid. Life Ins. Co., 436 F. Supp. 847, 848 (E.D.N.C. 1977) (quoting "two specific questions" and answers in a life insurance application);

---

[7] The court in Swartzberg applied N.C. Gen. Stat § 58-30, which is identical to the present N.C. Gen. Stat § 58-3-10.

Carroll v. Carolina Cas. Ins. Co., 227 N.C. 456, 458 (1947) ("[A]nswer to the question in the application as to absence of hernia."); James v. Integon Nat. Ins. Co., 228 N.C. App. 171, 171 (2013) (addressing answers "listed" "[o]n the application" for auto insurance); (see Pl's Mem. (DE 28) at 20-21).

Plaintiff's claim also fails because it does not meet the requirements of Rule 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

Here, plaintiff does not allege the "time, place, and contents of the false representations." Id. There are no allegations regarding any specific time or place of any false representation by Maitin. There are also insufficient allegations regarding the contents of the false representations. Plaintiff argues in its brief that it sufficiently alleged "the specific dates of the Commitment, the Closing, the tender of the attorney's Final Title Opinion with the inaccurate representations after the Closing [March 6, 2024] and before the issuance of the Policy [March 11, 2024], the issuance of the Policy, and the Claim submitted by [defendant]." (Pl's Opp. (DE 19) at 19; Reply (DE 30) at 65) (emphasis added). On the face of this argument, this begs the question "At what time and in what place were there inaccurate representations made?" and "What were the contents of the inaccurate representations made at that time and place?"

Plaintiff cites five paragraphs of the complaint in support of its argument, 18, 22, 24, 28, 36, but none of these paragraphs answer these questions sufficiently to meet the Rule 9(b) requirements. Paragraphs 18 and 22 cite a "preliminary opinion on title submitted by Maitin" and

plaintiff's issuance of closing protection letter, both on February 29, 2024, outside the pertinent time range. (Compl. ¶¶ 18, 22). Paragraph 24 states the closing took place March 6, 2024, and paragraph 28 states defendant submitted a claim April 19, 2024, which allegations similarly are inapposite. (Id. ¶¶ 24, 28). This leaves paragraph 36, which states:

> On March 11, 2024, Plaintiff's agent issued the Policy upon the mistaken belief that all requirements of the Commitment had been met, including specifically, that the Deed of Trust had been properly authorized, executed and delivered by Robert A. Johnson as the owner of the Subject Property.

(Id. ¶ 36). This allegation, too, leaves unanswered the critical questions raised by Rule 9(b).

Apart from plaintiff's argument, the court has considered additional allegations made in the complaint, suggesting conduct by Maitin. These, too, are similarly lacking "particularity" as to the "time, place, and contents of the false representations." Harrison, 176 F.3d at 784. For example, the complaint alleges that, "[o]n or after the Closing, Maitin, as the Defendant's closing attorney and settlement agent, tendered to [plaintiff the] deed of trust . . . together with a final opinion on title." (Compl. ¶ 26). This allegation does not specify the "time, place, and contents of [any] false representations." Harrison, 176 F.3d at 784. Indeed, plaintiff does not allege what the opinion on title says, nor whether it is that opinion, or some other statement(s) by Maitin, that constituted the false representation(s) made by Maitin.

Plaintiff also asserts, in conclusory terms, "[u]pon information and belief, [defendant], either directly or through its settlement agent [Maitin] represented to [p]laintiff that the Deed of Trust had been properly authorized, executed, and delivered by Robert A. Johnson as the owner of the Subject Property." (Id. ¶ 50). This assertion lacks the particularity required by Rule 9(b) because of the absence of any time or place specification, and because it does not state with particularity the "identity of the person making the misrepresentation." Harrison, 176 F.3d at 784. There is a lack of particularity as to identity because of plaintiff's inclusion of an "either . . . or"

as to the person or entity making the representation, (Compl. ¶ 50), and because plaintiff defines "Maitin" in the complaint "collectively" as including both "attorney Lawrence Maitin" and "the Maitin Law Firm, PLLC" (Id. ¶ 16). There is further a lack of particularity about whether defendant, Maitin (collectively), or Maitin (individually), or all, made the same asserted representation. Because of these shortcomings, plaintiff's avoidance claim fails the Rule 9(b) test.

Plaintiff suggests that it need not do more to meet Rule 9(b)'s requirements because "[t]he [c]omplaint sufficiently places [defendant] on notice of the particular circumstances to prepare its defense and thus satisfies the pleading requirements of Rule 9(b)." (Pl's Reply (DE 30) at 6). The analysis above, however, demonstrates that plaintiff has left critical holes in its allegations necessary to support a claim of avoidance. Therefore, the court rejects plaintiff's suggestion that defendant is "on notice of the particular circumstances to prepare its defense." (Id.).

Plaintiff argues that Maitin was not its agent and instead acted as an agent for defendant, citing a treatise on North Carolina real estate law, a North Carolina State Bar ethics opinion, and a United States Tax Court opinion. (See Pl's Mem. (DE 28) at 12-14). The court need not resolve this argument in addressing the instant claim, given the deficiencies in plaintiff's claims addressed herein. However, the court notes that plaintiff asserts only in conclusory terms that Maitin was defendant's "agent" and "attorney." (Compl. ¶ 26). The Closing Protection Letter also designates Maitin as plaintiff's "Approved Attorney" and as plaintiff's "Issuing Agent" "for the limited purpose of issuing policies." (Closing Protection Letter, Compl. Ex. E (DE 8-6) at 2). Where plaintiff's avoidance claim is premised upon the time period leading up to "issuance of the Policy," (Compl. ¶ 51), this further demonstrates the importance of alleging with particularity the circumstances of any representations made by Maitin, which particularity is lacking in the complaint.

In sum, plaintiff's claim for avoidance under for avoidance of the Policy under N.C. Gen. Stat. § 58-3-10 fails as a matter of law. Therefore, defendant's motion in this part is granted and plaintiff's motion in this part is denied.

4. Declaratory Judgment

Where plaintiff's declaratory judgment claim is premised upon the viability of its other claims, which fail as a matter of law, the court necessarily grants that part of defendant's motion seeking dismissal of plaintiff's declaratory judgment claim. See CGM, LLC v. BellSouth Telecommunications, Inc., 664 F.3d 46, 55 (4th Cir. 2011).

**CONCLUSION**

Based on the foregoing, defendant's motion to dismiss (DE 16) is GRANTED and plaintiff's motion for judgment on the pleadings (DE 27) is DENIED. Plaintiff's claims are DISMISSED for failure to state a claim upon which relief can be granted. The clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of May, 2025.

LOUISE W. FLANAGAN
United States District Judge